# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| WAYNE GERLING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17-CV-02702 JAR |
| | ) | |
| CITY OF HERMANN, MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the following motions: Defendant Officer Matthew Waite ("Waite")'s Motion to Exclude Expert Testimony of Michael Leonesio (Doc. No. 79); Waite's Motion for Summary Judgment (Doc. No. 80); Defendants City of Hermann, Missouri ("City") and Police Chief Frank Tennant ("Tennant")'s Motion to Disqualify and Exclude Expert Witness Testimony of Michael Leonesio (Doc. No. 85); Tennant's Motion for Summary Judgment (Doc. No. 87); and City's Motion for Summary Judgment (Doc. No. 89). The motions are fully briefed and ready for disposition.[1]

## I.     Background[2]

This civil rights action arises out of a citation issued to Plaintiff Wayne Gerling ("Gerling") for illegally parking his tractor-trailer on the street in front of his home in Hermann, Missouri. Gerling alleges that despite having all of the information necessary to issue a parking ticket after running the vehicle's license plate information, Waite proceeded to Gerling's home to procure his driver's license. When Gerling refused to produce his license, Waite intruded into his home and

---

[1] Waite did not file a reply to Gerling's memorandum in opposition to his motion for summary judgment (Doc. No. 103) and the time for doing so has passed.

[2] Relevant facts will be discussed together with Gerling's specific claims.

grabbed him by the wrist. As Gerling retreated, Waite tased him, causing him to fall into a table and sustain injuries to his chest and shoulder. Gerling was taken into custody and issued two citations arising out of this incident – one for violating City Ordinance No. 215.210 for resisting arrest, and one for violating City Ordinance No. 340.250 related to parking the subject vehicle. Gerling pled guilty to illegal parking. Gerling alleges that Tennant pressured the City prosecutor to prosecute him for resisting arrest. Gerling was found guilty of resisting arrest in municipal court. Gerling appealed and was granted a trial de novo. The City dismissed the charge of resisting arrest with prejudice on the day of trial, after a jury was impaneled and opening statements made, when Waite did not appear to testify.

Gerling asserts claims against Waite in his individual and official capacities for excessive force (Count I), arrest without probable cause (Count II), and prosecution without probable cause (Count III); claims against Tennant in his individual and official capacities[3] for prosecution without probable cause (Count IV), and deliberately indifferent policies, practices, customs, training and supervision (Count V); and a claim against the City for deliberately indifferent policies, practices, customs, training and supervision (Count VI).

## II.    Defendants' Motions to Exclude Expert Testimony of Michael Leonesio

Gerling retained Michael Leonesio, a police procedures expert, to opine on Waite's use of force against him, the Hermann Police Department practices and policies related to this incident, and the Missouri Revised Statutes and City of Hermann ordinances and regulations related to this incident. Defendants do not directly challenge Mr. Leonesio's expert qualifications[4] and after

---

[3] Count IV is brought against Tennant in his individual and official capacity; Count V is brought against Tennant without designating capacity. Tennant maintains this is of no import because he has addressed all of Gerling's claims. (Doc. No. 113 at 1 n.1).

[4] Tennant and the City note that Mr. Leonesio never earned a college degree and that since his retirement in 2012, he has not conducted any training for police officers on taser use or written any policies for taser

consideration, the Court is satisfied that Mr. Leonesio is qualified to testify on police policies and procedures based on his twenty plus years of work experience as a law enforcement officer and instructor in areas including critical incident response, use of force, defensive tactics and arrest control. (Michael Leonesio Curriculum Vitae, Doc. No. 96-6). He also has an extensive background in the use of electroshock weapons and currently manages the only electroshock weapon-exclusive independent testing laboratory in the United States. (Expert Report of Michael Leonesio, Doc. No. 96-1 at 3-4). Mr. Leonesio consults on a variety of topics, including law enforcement training/policy review, analysis, development, and implementation. He is a member of several professional associations, including the National Association of Civilian Oversight of Law Enforcement, and has received a number of professional awards relating to his police work.

In his first opinion, Mr. Leonesio concluded that Waite's response and issuance of a summons to Gerling for illegal parking was "unlawful, excessive, unnecessary and unreasonable; and constituted a gross abuse of power." (Id. at 7). In examining Waite's actions, Mr. Leonesio reviewed all published sections and schedules contained in the City's Traffic Code, Sections 300-385 and Schedules I-XVI) and found no restrictions or prohibitions related to the proper parking of a commercial vehicle on the street in front of Gerling's home. (Id. at 6). Mr. Leonesio also noted that while Waite and Tennant spoke of their extra-statutorial authority and practices regarding parking violations – especially with regard to commercial vehicles – both admitted that the applicable City ordinance addressing the ticketing of an unoccupied vehicle and its associated state statute "mandates" that the officer "shall leave a ticket on the vehicle." (Id.).

---

use. Any gap in Mr. Leonesio's qualifications or knowledge goes to the weight rather than the admissibility of his testimony, American Auto. Ins. Co. v. Omega Flex, Inc., 783 F.3d 720, 726 (8th Cir. 2015), and may be explored by Defendants on cross-examination, see Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 544 (8th Cir. 2006).

In his second opinion, Mr. Leonesio concluded that Waite's use of the taser on Gerling was "clearly excessive, unnecessary, and unreasonable," citing to, among other things, the Supreme Court's decision in <u>Graham v. Conner</u>, 490 U.S. 386 (1989), the Fourth Amendment, and the objectively reasonable officer standard. In evaluating Waite's actions, Mr. Leonesio "[took] into account 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake.'" (<u>Id</u>. at 8) (quoting <u>Graham</u>, 490 U.S. at 396).

With regard to the severity of the crime at issue, Mr. Leonesio noted that both of the offenses for which Gerling was charged were classified as misdemeanors, which cuts against a finding that the force used to effect an arrest was reasonable. (<u>Id</u>. at 9). He further stated that neither of the offenses could be considered especially dangerous or violent, and would not provide "a substantial government interest sufficient to justify the use of significant force such as a taser." (<u>Id</u>.).

In considering whether Gerling posed an immediate threat to the safety of officers or others, Mr. Leonesio stated that Gerling, "while certainly displaying noncompliant behavior during this incident, never verbally or physically threatened Waite's safety or that of anyone else on scene, and was obviously unarmed." (<u>Id</u>.). Mr. Leonesio noted that police officers are trained to employ tactical de-escalation techniques, deliver clear verbal commands, and exert competent physical control over subjects without, or before, resorting to significant force options, such as the taser, unless there are facts demonstrating an immediate threat warranting such force. Here, however, he concludes that Waite attempted none of these less invasive tactics, and failed to present facts demonstrating an immediate threat to officers or others justifying the use of significant force. Mr. Leonesio also referenced the Hermann Police Department's taser policy which states that the taser

not be used unless "necessary to control or subdue violent or potentially violent individuals." (See Doc. No. 84).

As for whether Gerling actively resisted arrest or attempted to evade arrest by flight, Mr. Leonesio assumed Gerling displayed a level of active resistance (by pulling away from Waite's grasp) and that his refusal to raise his hands when told to do so constituted passive resistance. Regardless, Mr. Leonesio concluded that given the totality of the circumstances, he "[saw] no evidence to justify the deployment of a significant force option like the taser." (Doc. No. 96-1 at 10-11; see also Deposition of Michael Leonesio ("Leonesio Depo."), Doc. No. 96-2 at 95:8-13). He also considered that industry best practice requires providing a warning that significant force would be used if one does not comply, and Waite did not provide such a warning to Gerling. (Id. at 11).

For his third and final opinion, Mr. Leonesio concluded that the Hermann Police Department knew, or should have known, that Waite required annual taser training as required by Department policy, industry standards, and manufacturer's recommendations and failed to provide that training. (Id. at 13). However, he acknowledged that he had received no training material to review in this case. (Id. at 11).

**Legal standard**

The Court acts as a gatekeeper for all expert testimony, ensuring that it is "not only relevant but reliable." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); see also Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). Under Federal Rule of Evidence 702, expert testimony is admissible where (1) the testimony is "based on scientific, technical, or other specialized knowledge," and is "useful to the finder of fact in deciding the ultimate issue of fact.," i.e., it is relevant; (2) the expert is "qualified to assist the finder of fact;" and (3) "the proposed evidence

[is] reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires." Johnson v. Mead Johnson & Co., LLC, 754 F.3d 557, 561 (8th Cir. 2014) (citation omitted).

While an expert may offer opinions that embrace the ultimate issue in the case, Fed. R. Evid. 704(a), he cannot testify as to matters of law, and legal conclusions are not a proper subject of expert testimony, Lombardo v. Saint Louis, No. 4:16-CV-01637-NCC, 2019 WL 414773, at *8 (E.D. Mo. Feb. 1, 2019). See also S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc., 320 F.3d 838, 841 (8th Cir. 2003); Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995). Similarly, "[o]pinions that 'merely tell the jury what result to reach' are not admissible." Lee v. Andersen, 616 F.3d 803, 809 (8th Cir. 2010) (quoting Fed. R. Evid. 704 advisory committee's note). "Courts must guard against invading the province of the jury on a question which the jury is capable of answering without the benefit of expert opinion. Robertson v. Norton Co., 148 F.3d 905, 908 (8th Cir. 1998).

Expert testimony on police policies and practices is generally admissible in a § 1983 case; however, expert testimony on matters of law is not. Zorich v. St. Louis Cty., No. 4:17-CV-1522 PLC, 2018 WL 3995689, at *2 (E.D. Mo. Aug. 21, 2018) (citing S. Pine Helicopters, 320 F.3d at 841 (expert testimony on "industry practice or standards may often be relevant...and expert or fact testimony on what these are is often admissible."). Additionally, "[l]egal conclusions do not qualify as expert opinions," and a "determination that a defendant's conduct constitutes a constitutional violation is a legal conclusion." Id. (quotation and citations omitted). Importantly, whether a police officer's conduct was "reasonable" or "excessive" under the Fourth Amendment are questions of law. See Brossart v. Janke, 859 F.3d 616, 624 (8th Cir. 2017); McKenney v. Harrison, 635 F.3d 354, 359 (8th Cir. 2011).

**Discussion**

Defendants seek to exclude Mr. Leonesio's first opinion regarding the improper issuance of summons for illegal parking. They argue that this opinion amounts to a challenge to the legality of Gerling's underlying conviction and is thus barred under Heck v. Humphrey, 512 U.S. 477 (1994)[5]. The Court need not address the Heck argument because this opinion is not relevant to any claim in the case. Gerling is not advancing a claim for the improper issuance of the parking ticket and in fact pled guilty to the offense. For this reason, the Court will not allow Mr. Leonesio, either through his report, deposition, or other testimony, to offer an opinion on the validity of the summons generally (Opinion 1) or as it relates to the use of force (Opinion 2). See Sorensen By and Through Dunbar v. Shaklee Corp., 31 F.3d 638, 647 (8th Cir. 1994) (citation omitted) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, nonhelpful.").

Defendants further argue that Mr. Leonesio's testimony and opinions regarding governmental interests and the reasonableness of Waite's actions amount to impermissible legal conclusions. Gerling responds that the federal rules explicitly permit experts to testify about the ultimate issues in a case, and the fact that Mr. Leonesio's opinions "necessarily entwine[ ] legal concepts due to the nature of the topic" does not make them legal conclusions. Indeed, Mr. Leonesio states in his report: "I am not a lawyer. I do not offer legal opinions." (Leonesio Report at 2).

Notably, just because an expert states he is not giving a legal opinion does not make it so. Morris v. Hockemeier, No. 05-0362-CV-W-FJG, 2007 WL 1747136, at *4 (W.D. Mo. June 18, 2007). An ultimate issue of fact is not the same as a legal conclusion, and legal conclusions remain

---

[5] In Heck, the Supreme Court determined that where a judgment in favor of a plaintiff would necessarily implicate the validity of his conviction, a plaintiff cannot pursue a § 1983 action to recover damages unless he proves his conviction has already been invalidated. 512 U.S. at 486–87.

objectionable in expert reports. See Peterson, 60 F.3d at 475 (finding the district court abused its discretion by allowing police practices expert to opine on the reasonableness of officers' actions and that the officers did not violate the Fourth Amendment); Williams v. Wal–Mart Stores, Inc., 922 F.2d 1357, 1360 (8th Cir. 1990) (citing Hogan v. AT & T, 812 F.2d 409, 411 (8th Cir. 1987) (finding that although testimony is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact, "a trial court may, however, exclude opinion testimony if it is so couched in legal conclusions that it supplies the fact finder with no information other than what the witness believes the verdict should be")).

A court in this District recently excluded Mr. Leonesio's expert testimony in a § 1983 case where he opined that an officer's use of force was "excessive" and "unnecessary", and that the officer's conduct was "unreasonable" or not "objectively reasonable," finding his testimony went beyond merely embracing the ultimate issues. Lombardo, 2019 WL 414773, at *8-10. The court was persuaded by Peterson, 60 F.3d 469, and its progeny, including a number of recent cases within this District addressing the admissibility of police policies and practices expert testimony. Id. at *9 (collecting cases).

In Peterson, the Eighth Circuit held that a trial court's admission of a police practices and procedures expert's testimony regarding "his views concerning the reasonableness of the officers' conduct in light of 'Fourth Amendment standards' ... was not a fact-based opinion, but a statement of legal conclusion," and that admission of such testimony constituted reversible error. Peterson, 60 F.3d at 475. Courts in this District have repeatedly followed Peterson. See, e.g., Zorich, 2018 WL 3995689, at *3 (excluding police policies and practices expert's testimony regarding the reasonableness of the defendant officers' actions as legal conclusions that invade the province of the jury); Swink v. Mayberry, No. 4:17-CV-00791-PLC, 2018 WL 2762549, at *3 (E.D. Mo. June

8, 2018) (excluding police pursuit practices expert's opinion regarding whether the officers' actions were reasonable under the totality of the circumstances and in light of Fourth Amendment standards, and further holding expert's report and deposition could not be admitted at trial because they were "inextricably linked with topics upon which he may not opine"); Sloan v. Long, No. 4:16-CV-00086-JMB, 2018 WL 1243664, at *3 (E.D. Mo. Mar. 9, 2018) (excluding police policy and practices expert's opinion that an officer's use of force was unnecessary, unreasonable, or punitive and served no objectively unreasonable purpose as impermissible legal conclusion).

"While expert opinions can embrace the ultimate issue of fact ... including whether standards or practices are applicable to a given situation and whether those standards or practices were met in the situation [under Federal Rule of Evidence 704,] ... an expert cannot testify that following or failing to follow certain standards met or failed to meet the applicable *legal* standard, such as the reasonableness of [the defendant officer's] actions." Lombardo, 2019 WL 414773, at *9 (quoting Sloan, 2018 WL 1243664, at *4) (internal quotation marks omitted) (emphasis in original).

This Court likewise finds that Mr. Leonesio's testimony goes beyond just embracing the ultimate issues. It is not useful to the jury but, rather, imposes his legal conclusions on the jury. Therefore, the Court will not allow Mr. Leonesio to offer legal conclusions that touch upon the ultimate legal issues in this case, i.e., whether Waite's actions were excessive, unnecessary, or otherwise unreasonable under the totality of the circumstances and in light of Fourth Amendment standards.

Nevertheless, as noted by the court in Lombardo, "a police procedure expert's testimony may be proper on issues other than the reasonableness of an officer's conduct under Fourth Amendment standards … [T]he role of such an expert is to contextualize the evidence the jury will

hear about the use of force by the defendant against the plaintiff, in light of the standards practiced by officers throughout the country." 2019 WL 414773, at *10 (internal quotation marks and citations omitted). Thus, to the extent Gerling proffers Mr. Leonesio's testimony as to the general prevailing standards and policies in the field of law enforcement for using force under the circumstances of this case, the Court will allow it. Id. (citing Swink, 2018 WL 2762549, at *3 (allowing police practices expert's testimony on general prevailing standards and policies in the field of law enforcement with respect to the use of force in vehicular pursuits); Sloan, 2018 WL 1243664, at *4 (allowing police policy and practices expert to testify about national standards and offer opinions as to how those standards should manifest in hypothetical situations, including that mirroring the version of events giving rise to the action, and to testify "generally" on the proper methods for securing a suspect).

Lastly, the City and Tennant specifically argue that Mr. Leonesio's third opinion regarding the Hermann Police Department's failure to provide annual taser training as required by Department policy, industry standards, and manufacturer's recommendations is unsupported and must be excluded because he admitted he never reviewed any training material for this case. In Lombardo, the court excluded Mr. Leonesio's opinions on the defendant city's use of force training for lack of foundation given his testimony that he was not provided with access to relevant training materials and reviewed nothing. 2019 WL 414773, at *11. Similarly, the Court finds that Mr. Leonesio has failed to articulate a proper basis for his opinion that the Hermann Policy Department knew or should have known that Waite required annual taser training and failed to provide it. (Opinion 3). "In other words, it is improper for him to conclude that the City failed to do something when he did not actually review what they did." Id.

To the extent Gerling proffers Mr. Leonesio's testimony to discuss the general prevailing industry standards and manufacturer's recommendations for taser training as it relates to the facts of this case, the Court will allow it. See Swink, 2018 WL 2762549, at *3 (allowing police practices expert's testimony on general prevailing standards and policies in the field of law enforcement with respect to the use of force); Sloan, 2018 WL 1243664, at *4 (allowing police policy and practices expert to testify about national standards and offer opinions as to how those standards should manifest in hypothetical situations).

For these reasons, Mr. Leonesio's opinions and testimony will be excluded in part and allowed in part as set forth above.

### III. Gerling's claims against Waite in his individual capacity

Gerling brings three claims against Waite: excessive force (Count I); false arrest (Count II); and malicious prosecution (Count III). Waite argues he is entitled to qualified immunity on all three claims.

### Qualified immunity

An official sued in his individual capacity is entitled to summary judgment based on qualified immunity unless (1) the evidence, viewed in the light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time so that a reasonable officer would have understood that his conduct violated that right. Capps v. Olson, 780 F.3d 879, 884 (8th Cir. 2015) (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)).

The court must follow a two-step inquiry in a qualified immunity analysis: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct."

Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009). A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002). The relevant question is whether a reasonable officer would have fair warning that his conduct was unlawful. Brown, 574 F.3d at 499; see also Buckley v. Ray, 848 F.3d 855, 863 (8th Cir. 2017); Blazek v. City of Iowa City, 761 F.3d 920, 922-23 (8th Cir. 2014).

The Court may address the questions in either order, but a § 1983 plaintiff can defeat a claim of qualified immunity only if the answer to both questions is yes. Boude v. City of Raymore, 855 F.3d 930, 933 (8th Cir. 2017) (citing Pearson, 555 U.S. at 236). "If either question is answered in the negative, the public official is entitled to qualified immunity." Norris v. Engles, 494 F.3d 634, 637 (8th Cir. 2007) (quoted case omitted). Thus, to avoid summary judgment, Gerling must produce sufficient evidence to create a genuine issue of fact as to whether Waite violated a clearly established constitutional right. De La Rosa v. White, 852 F.3d 740, 743 (8th Cir. 2017).

**Excessive force (Count I)**

In Count I, Gerling alleges Waite used excessive force when he tasered him. Claims that law enforcement officers have used excessive force in the course of an arrest or other "seizure" are analyzed under the Fourth Amendment and its "reasonableness standard." Graham v. Connor, 490 U.S. 386, 394-96 (1989). The question the Court must ask is whether, under the totality of the circumstances, the officer's actions were "objectively reasonable." Cook v. City of Bella Villa, 582 F.3d 840, 849 (8th Cir. 2009) (quoting Graham, 490 U.S. at 396).

In determining whether the force used was reasonable, relevant circumstances include the severity of the crime, the danger the suspect poses to the officer or others, and whether the suspect is actively resisting arrest or attempting to flee. Id. "[F]orce is least justified against nonviolent

misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." Thompson v. Monticello, Arkansas, City of, 894 F.3d 993, 998 (8th Cir. 2018) (quoting Small v. McCrystal, 708 F.3d 997, 1005 (8th Cir. 2013)); see also Brown v. City of Golden Valley, 574 F.3d 491, 499 (8th Cir. 2009). Ultimately, the reasonableness of the force applied must be judged from the perspective of a reasonable officer on the scene "rather than with the 20/20 vision of hindsight." Brown, 574 F.3d at 496. Reasonableness under the Fourth Amendment is generally a question of fact for the jury. Duncan v. Storie, 869 F.2d 1100, 1103 (8th Cir. 1989); Patzner v. Burkett, 779 F.2d 1363, 1371 (8th Cir. 1985).

Viewed in the light most favorable to Gerling, the record establishes the following facts.[6] On the evening of Friday, November 18, 2012, Gerling, a commercial truck driver, parked his tractor-trailer in front of his home on East Ninth Street in the City of Hermann. That same evening, an anonymous call was received at the City Police department asking whether it was illegal to park a semi on City streets. Waite proceeded to the location and observed a tractor-trailer parked along the street. The vehicle was registered to Mullenix Trucking. Believing wrongly that he needed the driver's name to issue a citation for illegal parking, Waite went to a house on the street where the vehicle was parked. The individual who answered the door pointed Waite to Gerling's house as the possible driver.

Waite then walked down the street to Gerling's house and knocked on the door. Gerling's son-in-law answered the door. Waite asked whose truck it was and Gerling answered that it was

---

[6] The facts are taken from Defendants' statements of uncontroverted material facts (Doc. Nos 81, 91) and Plaintiff's statement of additional material facts (Doc. Nos. 99, 114). The Court has also reviewed a copy of the video recording showing the interactions between Gerling and Waite. (Doc. No. 102-4). When there is a videotape of the incident and the parties do not object to its admissibility, the Court must "view[ ] the facts in the light depicted by the videotape," when possible. Ransom v. Grisafe, 790 F.3d 804, 807 (8th Cir. 2015) (quoting Scott v. Harris, 550 U.S. 372, 381 (2007)). Here, neither side has objected to the admissibility of the recording.

his. Waite told Gerling he was going to issue him a parking ticket, to which Gerling responded that it was a commercial street and that the vehicle was legally parked. Waite asked Gerling if he had his driver's license on him. Gerling stated, "You ain't getting my license buddy." In response Waite stated, "Alright, come on out here, you're going to jail." According to Gerling[7], he was completely inside his house and standing behind his son-in-law when Waite reached into the house and grabbed his wrist. Gerling reacted by twisting out of Waite's grasp and told Waite he was not coming into his "fucking house" and to "get the fuck out of my house." When Waite told Gerling a second time that he was going to jail, Gerling stated, "I don't think so." Gerling then turned back into his house and walked into the living room. At this point in time, there were two other people standing in the doorway of the house, Gerling's son-in-law and his eight-year-old grandson. Waite drew his taser and told Gerling to "put [his] hands up" as he armed the taser. According to Gerling, he was trying to turn back around to Waite but Waite deployed the taser before he could comply. Gerling fell onto his coffee table and then to the floor. All of this happened within a matter of 28 seconds from Waite's first knock on Gerling's door.

Waite argues his use of force was reasonable given Gerling's interference with his investigation of the parking violation, noncompliance and active resistance. He contends it was not clearly established on November 18, 2012 that an officer was forbidden from using a taser to effect an arrest of a suspect who ignored multiple instructions from the officer, refused to comply with instructions, and resisted arrest by pulling away from the officer in an attempt to reenter a residence where multiple unknown individuals were located. Waite relies primarily on Carpenter v. Gage, 686 F.3d 644 (8th Cir. 2012) and Ehlers v. City of Rapid City, 846 F.3d 1002 (8th Cir.

---

[7] The video recording is dark and difficult to make out.

2017), both finding the use of a taser objectively reasonable where the arrestee was physically resistant and non-compliant with a law enforcement officer. Waite also cites <u>Kelsay v. Ernst</u>, 905 F.3d 1081 (8th Cir. 2018), <u>reh'g en banc granted, opinion vacated</u> (Nov. 30, 2018), <u>on reh'g en banc,</u> 933 F.3d 975 (8th Cir. 2019), which held that "[i]t was not clearly established in May 2014 that a deputy was forbidden to use a takedown maneuver to arrest a suspect who ignored the deputy's instruction to 'get back here' and continued to walk away from the officer." 933 F.3d at 980. Waite's reliance on <u>Kelsay</u> is misplaced. <u>Kelsay</u> was decided after the incident involving Waite and Gerling, and thus is irrelevant to the Court's evaluation of Waite's qualified immunity defense based on existing precedent in this jurisdiction at the time of the challenged conduct. <u>See</u> <u>Robinson v. Payton</u>, 791 F.3d 824, 828-29 (8th Cir. 2015) (citing <u>Plumhoff v. Rickard</u>, 134 S. Ct. 2012, 2023 (2014) (citation and internal quotation marks omitted)); <u>Gladden v. Richbourg</u>, 759 F.3d 960, 964 (8th Cir. 2014).

Gerling responds that in the Eighth Circuit, a non-violent, non-fleeing subject has a clearly established right to be free from the use of a taser, citing <u>De Boise v. Taser Int'l, Inc.</u>, 760 F.3d 892 (8th Cir. 2014), and <u>Brown</u>, 574 F.3d at 499 (ruling that an officer violated clearly established rights in 2005 by using a taser against "a nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety, and whose only noncompliance with the officer's commands was to disobey two orders to end her phone call to a 911 operator."). <u>See also</u> <u>Shekleton v. Eichenberger</u>, 677 F.3d 361, 366 (8th Cir. 2012) (affirming district court's denial of qualified immunity where officer used his taser on an unarmed suspected misdemeanant who did not resist arrest, did not threaten the officer, did not behave aggressively towards him, and who informed officer that he was physically unable to place his arms behind his back because of his disability).

Considering the circumstances surrounding Gerling's arrest, the Court is not convinced that Waite's use of force was objectively reasonable as a matter of law. The Court finds it troubling that within a matter of 28 seconds from Waite's arrival at Gerling's door,  Gerling was tased and lying on his living room floor. This incident arose when Waite attempted to serve a summons on Gerling for illegal parking, a misdemeanor, when in fact, the applicable City ordinance and state statute mandate that the officer "*shall* conspicuously affix to such vehicle a uniform traffic ticket." Waite testified that he arrested Gerling for interfering with an investigation by refusing to produce his driver's license, yet it is not unlawful to fail to display a driver's license on demand of a police officer. See State v. Miller, 172 S.W.3d 838, 848 (Mo. banc 1978). Further, there is no evidence suggesting that Waite felt his personal safety threatened. The incident did not involve any physical threats or threats with a weapon. Gerling was clearly contentious and argumentative; however, "verbal abuse alone does not justify the use of any force." Bauer v. Norris, 713 F.2d 408, 413 (8th Cir. 1983); see also Van Raden v. Larsen, No. 13-2283 (DWF/LIB), 2015 WL 853592, at *7 ( D. Minn. Feb. 26, 2015) (finding fact issues as to the reasonableness of the use of a taser where plaintiff, although resisting being removed from his home and verbally expressing his anger and frustration, was not violent towards the officers or attempting to flee, and did not have a weapon). Gerling maintains he was inside his house at all times, that he "twisted out" of Waite's grasp reflexively, and that he had no time to comply with Waite's order to turn around before Waite deployed the taser. Whether under these circumstances a reasonable officer in Waite's position would have interpreted Gerling's actions as noncompliance or resistance (either passive or active) is a disputed question of fact that a jury must decide.

Because the Court cannot determine whether the force used by Waite was objectively reasonable as a matter of law, Waite's motion for summary judgment on Count I will be denied.

See, e.g., McDowell v. Blankenship, No. 4:08–CV–602 (SNLJ), 2012 WL 3095520, at *8 (E.D. Mo. July 30, 2012) (denying summary judgment on an excessive use of force claim due to dispute about whether the plaintiff resisted arrest); Blair v. Brown, No. 4:10–CV–1973 (JCH), 2011 WL 6715888, at *6 (E.D. Mo. Dec. 21, 2011) (denying summary judgment on an excessive use of force claim because the parties "have drastically different accounts of Plaintiff's arrest"); Kukla v. Hulm, 310 F.3d 1046, 1050 (8th Cir. 2002) (affirming the denial of summary judgment due to a genuine issue of whether force used was excessive).

**Arrest without probable cause (Count II)**

In Count II, Gerling alleges Waite violated his Fourth Amendment right to be free from unreasonable seizures when he arrested him in his home without probable cause, a warrant, or exigent circumstances. "The Fourth Amendment right of citizens not to be arrested without probable cause is indeed clearly established." Kuehl v. Burtis, 173 F.3d 646, 649 (8th Cir. 1999). An officer is entitled to qualified immunity if there is at least "arguable probable cause" for a warrantless arrest. Borgman v. Kedley, 646 F.3d 518, 522–23 (8th Cir. 2011) (quoting Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005)). "Probable cause to make a warrantless arrest exists 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" Ulrich v. Pope Cty., 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting Borgman, 646 F.3d at 523). When an officer makes a warrantless arrest under the mistaken belief that probable cause for the arrest exists, that officer is shielded by qualified immunity "if the mistake is 'objectively reasonable.'" Borgman, 646 F.3d at 523 (quoting Amrine v. Brooks, 522 F.3d 823, 832 (8th Cir. 2008)).

In support of his motion, Waite first argues that any claim that the parking citation was improperly issued, or that he lacked probable cause to issue the citation, is barred by Heck, 512 U.S. at 486-87.[8] Specifically, Waite argues that to prevail on this claim, Gerling would have to establish the unlawfulness of his conviction for illegal parking, and that because Gerling pled guilty to illegal parking, this would constitute an impermissible collateral attack on his conviction under Heck.

The basis of Gerling's false arrest claim arises from his contention that Waite lacked probable cause to arrest him for interfering with an investigation – not for illegal parking. Indeed, Waite testified that his "purpose for arresting [Gerling] was not the illegal parking in itself. It was the interfering with my investigation on that illegal parking[ ] … by failing to identify himself and provide any further information." (Deposition of Matthew Waite ("Waite Depo."), Doc. No. 102-8 at 73:16-23; 74:6-21; 75:6-19). Therefore, Gerling's claim that Waite lacked probable cause to arrest him – even if successful – would not necessarily imply that his conviction (by guilty plea) for illegal parking was unlawful, and Heck does not apply.

In further support of his motion, Waite argues there was in fact probable cause for arresting Gerling[9] and that even if the Court found otherwise, he is entitled to qualified immunity because it was not clearly established in November 2012 that an officer could not follow a suspect into his house after the arrest was made in the doorway, after the suspect attempted to flee into his house in an attempt to evade the arrest. Waite cites United States v. Santana, 427 U.S. 38, 40 n. 1, 42-43

---

[8] Tennant joins in this argument. (Doc. No. 88 at 9-10).

[9] Waite testified he arrested Gerling for interfering with an investigation given his refusal to produce his driver's license. In his briefing, however, Waite appears to be arguing that Gerling was arrested for resisting arrest. (Doc. No. 82 at 22). In either case probable cause is highly questionable. The failure to produce a driver's license is not a basis for an arrest, see State v. Miller, 172 S.W.3d 838, 848 (Mo. banc 1978). Further, the Court has found a disputed issue of material fact as to whether Gerling resisted arrest.

(1976), where the court found defendant was located in a public place when the police arrested her ("directly in the doorway—one step forward would have put her outside, one step backward would have put her in the vestibule of her residence") and thus was not entitled to Fourth Amendment protection.

Different standards apply to evaluate the constitutionality of a warrantless arrest depending upon whether the suspect was arrested in his home or outside in a public place. It is well established that a warrantless arrest within the confines of the home, barring exigent circumstances, is unconstitutional. Payton v. New York, 445 U.S. 573, 586 (1980); Duncan, 869 F.2d at 1102; Mitchell v. Shearrer, 729 F.3d 1070 (8th Cir. 2013).

In Duncan, the plaintiff filed a § 1983 action against two officers after he was arrested without a warrant while at his home. 869 F.2d at 1101. The officers claimed the plaintiff had "stepped outside onto the porch" when they decided to arrest him, meaning he was in a public place and not entitled to Fourth Amendment protections. Id. at 1101-02. The plaintiff had a different story, testifying he "remained inside his front door" and in fact had "attempted to close the door" before the officers reached across his threshold and into his home to forcibly effect the arrest. Id. at 1101. The court considered Santana and concluded it would be "unwise to become preoccupied with the exact location of the individual in relation to the doorway," focusing instead on "the individual's reasonable expectation of privacy and whether that individual came to the doorway voluntarily." Id. at 1102. Given the parties' competing narratives, the court denied the officers summary judgment because "[a] jury could find that [the plaintiff's] attempt to retreat, much like the suspect's retreat in Santana, placed him firmly inside his home." Id. at 1103.

The court reached the same conclusion in Mitchell, 729 F.3d at 1074-76. There, the plaintiff opened the interior door to his house in response to the officer's knock, without knowing

who was standing on his porch. When the plaintiff attempted to close his door, the officer prevented him from doing so and pulled him outside to arrest him. Id. at 1075. Like in Duncan, the court denied qualified immunity because "a jury could find that [the plaintiff] was within his home—standing far enough away from the threshold to allow the interior door to swing mostly shut and maintaining a reasonable expectation of privacy—when [the officer] began to effectuate the arrest." Id. at 1075-76. The court held that a reasonable officer would have known at the time the plaintiff tried to close the interior door to his home that he stood within his home and for this reason could not be pulled therefrom and placed under arrest in the absence of exigent circumstances. Id. at 1076. The court held the arresting officer was not entitled to qualified immunity by making the arrest after the arrestee tried to close the door. Id. at 1076-77.

Like in Mitchell and Duncan, genuine issues of material fact preclude summary judgment in favor of Waite. The parties dispute whether Gerling was inside his home at the time of the arrest or outside in a public place, i.e., his porch. According to Waite, Gerling had stepped one foot out onto his porch from the doorway.[10] (Doc. 81 at ¶ 33). Gerling maintains that while he may have stepped one foot onto the threshold of his front door to point to the street to indicate that it was a commercial zone, he never stepped outside his house and was in fact completely inside his house and standing behind his son-in-law when Waite prevented the storm door from closing and reached across the threshold to grab his wrist.

Nothing in the record, including the video/audio recording of the incident, clearly contradicts Gerling's version of the facts, which the Court must view in the light most favorable to Gerling. Therefore, the Court cannot conclude as a matter of law that Gerling voluntarily placed himself in a public place and willingly relinquished the expectation of privacy that he is entitled

---

[10] Waite testified on deposition that he could not recall Gerling's exact location – whether he was outside or inside the door. (Waite Depo. at 78:18-79:9).

to when he is within his home. Because it would be improper to grant summary judgment before a jury has determined these issues, Waite's motion for summary judgment on Count II will be denied. Duncan, 869 F.2d at 1103.

**Malicious prosecution (Count III)**

In Count III, Gerling asserts a Fourth Amendment claim for malicious prosecution on the grounds that Waite "assist[ed] and encourage[ed] the prosecution of [Gerling] without probable cause." Waite argues he is entitled to qualified immunity because it was not clearly established in 2012 that such a claim is cognizable under § 1983. The Court agrees.

Although the Eighth Circuit has recognized that facts supporting a malicious prosecution claim could arise under § 1983 where plaintiffs have alleged an underlying cognizable constitutional violation, Brown v. City of Pine Lawn, Mo., No. 4:17CV01542 ERW, 2018 WL 950211, at *5 (E.D. Mo. Feb. 20, 2018), it remains unclear under Eighth Circuit law whether a federal claim for malicious prosecution exists under the Fourth Amendment. See Joseph v. Allen, 712 F.3d 1222, 1228 (8th Cir. 2013) (plaintiff's allegation of malicious prosecution cannot sustain a valid claim under § 1983); Harrington v. City of Council Bluffs, IA, 678 F.3d 676, 679 (8th Cir. 2012) ("If malicious prosecution is a constitutional violation at all, it probably arises under the Fourth Amendment."); Kurtz v. City of Shrewsbury, 245 F.3d 753, 758 (8th Cir. 2001) (an allegation of malicious prosecution without more cannot sustain a civil rights claim under § 1983); Gunderson v. Schlueter, 904 F.2d 407, 409 (8th Cir. 1990) (finding the plaintiff's malicious prosecution claim may be taken as a claim for the violation of procedural due process rights or substantive due process rights). However, the Court need not resolve the issue of whether any provision of the Constitution prohibits a "malicious prosecution," because even if such a right exists, it was not clearly established at the time of Gerling's prosecution.

In 2013, at the time Gerling was prosecuted, a reasonable government official would not have known that a malicious prosecution violated Gerling's constitutional rights. Ferguson v. Short, No. 2:14-CV-04062-NKL, 2014 WL 3925512, at *5–6 (W.D. Mo. Aug. 12, 2014) (citing Harrington, 678 F.3d at 680–81). In Albright v. Oliver, 510 U.S. 266 (1994), the Supreme Court noted the "embarrassing diversity of judicial opinion" on the extent to which a claim of malicious prosecution is actionable under § 1983, but declined to resolve the issue. Id. (quoting Albright, 510 U.S. at 270, n. 4). In 2012, the Eighth Circuit, citing Albright, concluded that a § 1983 malicious prosecution claim would "probably" arise under the Fourth Amendment "[i]f malicious prosecution is a constitutional violation at all," suggesting that even the Eighth Circuit is unsure. Id. (quoting Harrington, 678 F.3d at 679). The Eighth Circuit also acknowledged that the circuits are divided on the issue of whether or when malicious prosecution violates the Fourth Amendment, but declined to enter the debate. Id. (quoting Harrington, 678 F.3d at 680).

Because no clearly established federal claim for malicious prosecution existed at the time of Gerling's prosecution in 2013, Waite is entitled to qualified immunity. Accordingly, Waite's motion for summary judgment will be granted on Count III.

## IV.    Gerling's claims against Tennant

Gerling brings two claims against Tennant: malicious prosecution in violation of the Fourth Amendment (Count IV); and deliberately indifferent policies, practices, customs, training and supervision in violation of the Fourth and Fourteenth Amendments (Count V).

As a threshold matter, both Tennant and the City move to strike Gerling's statement of additional facts submitted in opposition to their motions for summary judgment. Tennant and the City state that neither Rule 56 nor the Local Rules of this Court authorize a defending plaintiff to submit additional facts. Because this Court has an interest in evaluating a dispositive motion in

light of all the facts reasonably available to it, and because a non-moving party has a right to present facts not encompassed in the moving party's motion that it believes supports its claim and refutes summary judgment, see Gatewood v. Columbia Public School Dist., 415 F. Supp.2d 983, 985-86 (W.D. Mo. 2006), the Court will consider Gerling's additional facts to the extent those facts are supported by appropriate admissible evidence and deny Tennant and the City's motion to strike.

### Malicious prosecution (Count IV)

In Count IV, Gerling alleges that Tennant "assist[ed] and encourage[ed] the prosecution of [Gerling] without probable cause" in violation of his Fourth Amendment rights. Gerling contends that Tennant's purpose in encouraging his prosecution was to help the City avoid civil liability for its actions in a subsequent case, as evidenced by Tennant's February 8, 2013 memorandum to the City prosecutor stating in pertinent part:

> I am aware that you made a standard recommendation for the charges, which is absolutely appropriate for this matter. I would ask that we stick to our guns though. If the recommendation is declined, I would ask that the matter go to trial if necessary. Obviously, some type of finding of guilt, regardless of the penalty will greatly assist the city in defense of any potential suit later.

(Doc. No. 99-10). This factual allegation is the sole basis for Gerling's claim against Tennant. While this conduct may be improper and inappropriate interference by Tennant in the prosecution of the case against Gerling, it does not rise to the level of egregious conduct in the examples cited by Gerling. See, e.g., Moran v. Clarke, 296 F.3d 638, 646 (8th Cir. 2002) (police officials conspired to manufacture evidence to prosecute an innocent person); White v. Smith, 696 F.3d 740, 754 (8th Cir. 2012) (officers intentionally coached witnesses into providing false testimony that fit their narrative of how the crime was committed).

Tennant argues that Gerling's claim fails because a § 1983 malicious prosecution claim is not cognizable in the Eighth Circuit, citing, *inter alia*, Kurtz, 245 F.3d 753 and Joseph, 712 F.3d 1222, and that in any event, the claim is barred by qualified immunity. As discussed above in Section III, given the uncertainty as to whether a federal claim for malicious prosecution even exists under the Fourth Amendment, a reasonable government official could not have known at the time Gerling was prosecuted that he was violating a constitutional right. Thus, Tennant is entitled to qualified immunity on this claim. Ferguson, 2014 WL 3925512, at *5-6. Tennant's motion for summary judgment will be granted on Count IV.

**Custom and policy/failure to train (Count V)**

In Count V, Gerling asserts both a custom and policy claim and a failure to train claim against Tennant. These claims are brought against Tennant without reference to the capacity in which he is sued. "This court has held that, in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." Alexander v. Hedback, 718 F.3d 762, 766 (8th Cir. 2013) (quoting Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999)). The Court will therefore construe Count V as being against Tennant in his official capacity only. A suit against a municipal officer in his or her official capacity is a suit against the municipality itself. Kentucky v. Graham, 473 U.S. 159, 165 (1985); Parrish, 594 F.3d at 997. Qualified immunity is not a defense available to governmental entities, but only to government employees sued in their individual capacity. Johnson, 172 F.3d at 535.

A municipality cannot be held liable under § 1983 on a respondeat superior theory for the unconstitutional acts of its employees. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-91 (1978). To state a claim for § 1983 liability against a municipality, the plaintiff must show that a

constitutional violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. Id.; City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89 (1989); Corwin v. City of Independence, MO, 829 F.3d 695, 699 (8th. Cir. 2016); Ware v. Jackson Cnty., Mo., 150 F.3d 873, 880 (8th Cir. 1998). A "policy" is a "deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999).

As policymaker for the City's police department policies and practices, Tennant issued a general order in December 2000 regarding guidelines for the enforcement of traffic and criminal laws. According to these guidelines, "[a]bsent unusual circumstances, enforcement personnel should personally give a copy of the summons to the violator at the time the summons is completed" (Doc. No. 99-7), despite the fact that municipal and state law mandates that officers leave traffic tickets on the vehicle.[11] There is no dispute that this policy was in force in 2012, and that City officers, including Waite, were instructed to follow it.[12] (Deposition of Chief Marlon Walker, Doc. No. 99-3 at 44:15-46:21; 47:1-48:22; see also Waite Depo., Doc. No. 99-1 at 17:20-18:12).

---

[11] City Municipal Code Section § 375.030 and Mo. Rev. Stat. § 300.585 provide that "whenever any motor vehicle without driver is found parked or stopped in violation of any of the restrictions imposed by ordinance of the City or by State law, the Officer finding such vehicle shall take its registration number and may take any other information displayed on the vehicle which may identify its user, and *shall conspicuously affix to such vehicle a uniform traffic ticket* for the driver to answer to the charge against him …" (Doc. No. 99-8) (emphasis added).

[12] Gerling also asserts that Tennant, acting in his capacity as Traffic Engineer for the City, issued a memorandum to the Hermann Police Department on October 12, 2012, stating that commercial motor vehicles were prohibited from parking on any residential street within the City (Doc. No. 99-5), in contravention of municipal law permitting parking of commercial vehicles in areas zoned for commercial use, including the street in front of Gerling's home. As discussed above, the summons for illegal parking, regardless of its validity, is not central to any claim in this case. It is undisputed that Gerling was not arrested or tased for illegal parking and in fact pled guilty to that offense.

The Court's first inquiry in any case alleging municipal liability under § 1983 is whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. Canton, 489 U.S. at 385; see also Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."). Gerling alleges the City's policy was the moving force behind and proximately caused the violations of his constitutional rights.

The Supreme Court instructs that § 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." Monroe v. Pape, 365 U.S. 167, 187 (1961). "To establish proximate cause [under Missouri law], it is sufficient if there is substantial evidence which shows that the injury is a natural and probable consequence of the negligent act or omission." Ricketts v. City of Columbia, Mo., 856 F. Supp. 1337, 1341–42 (W.D. Mo. 1993), aff'd, 36 F.3d 775 (8th Cir. 1994) (quoting Morrow v. Greyhound Lines, Inc., 541 F.2d 713, 718 (8th Cir. 1976)). "Plaintiffs must prove the challenged conduct was a substantial or motivating factor in causing the injury." Id. (citing Mount Healthy City School District Board of Education v. Doyle, 429 U.S. 274 (1977)). "Proof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact." Id. (quoting Spell v. McDaniel, 824 F.2d 1380, 1388 (4th Cir. 1987)). Gerling argues that the City's policy requiring personal service of summons for parking violations set up a face-to-face confrontation between himself and Waite on the night of November 18, 2012 that ultimately resulted in Waite tasing him. Although misguided and contrary to both state and municipal law, the policy is not the proximate cause of the alleged violations of Gerling's constitutional rights.

"[I]n order for an act to constitute the proximate cause of an injury, *some* injury … must have been reasonably foreseeable." Oberkramer v. City of Ellisville, 650 S.W.2d 286, 298 (Mo. Ct. App. 1983) (quoting Dickerson v. St. Louis Pub. Serv. Co., 286 S.W.2d 820, 824 (Mo. 1956) (emphasis in the original)). Here, the City's policy provides for service of summons by "other appropriate methods when circumstances require such action," including by mail, "provided the violator has been informed of the violation and the fact that a summons is forthcoming." (Doc. No. 99-7). Because Waite had the option of leaving the summons on Gerling's porch or even mailing it to him, Defendants could not have foreseen that requiring personal service of a summons would set in motion a sequence of events resulting in excessive force. Put simply, Gerling's theory of causation – that but for the implementation of the City's policy, he would not have been tased and arrested – is too attenuated for § 1983 liability. See, e.g., Alexander v. Hedback, 718 F.3d 762, 766-67 (8th Cir. 2013) (affirming dismissal of § 1983 claim against city because plaintiff's theory of proximate causation was too attenuated: complaint alleged that city failed to train its officers in how to evict lawfully; had they been properly trained, they would have reviewed and independently investigated the validity of the bankruptcy court's eviction order and, once they had determined the invalidity of the order, they would not have assisted in executing the order and thus would not have violated plaintiff's constitutional rights). For this reason, Tennant's motion for summary judgment on Gerling's policy claim will be granted.

With regard to the failure to train or supervise, a municipality can be liable under § 1983 only "where the failure to train [or supervise] amounts to deliberate indifference to the rights of persons with whom the police came into contact." Baude v. City of St. Louis, No. 4:18-CV-1564-RWS, 2019 WL 4750254, at *6 (E.D. Mo. Sept. 30, 2019) (quoting City of Canton, 489 U.S. at 388). The plaintiff must show the City "had notice that the training procedures and supervision

were inadequate and likely to result in a constitutional violation." Id. (quoting Brewington v. Keener, 902 F.3d 796, 803 (8th. Cir. 2018)).

A review of the record demonstrates that Waite graduated from the police academy in 2004 and received a class A license from the State of Missouri Department of Public Safety. He received formal taser training in 2010 after joining the Warrenton Police Department, but reported no other formal training with regard to the taser. According to Gerling's police practices and procedures expert, the industry standard is that officers be updated/recertified annually in the use of the taser. Waite was hired by the City on May 10, 2012 and received field training. As part of that training, Waite was required to familiarize himself with Police Department policies and procedures, including the City's use of force policy[13] and ordinances, and to pursue continuing education. Prior to November 18, 2012, Waite had never been the subject of any disciplinary action by the City, nor was he ever the subject of any allegation or complaint regarding the use of excessive force. (Affidavit of Frank Tennant (Doc. No. 91-5) at ¶ 6). A September 4, 2012 performance review indicated that Waite met or exceeded all requirements of the Hermann Police Department and was subject to no discipline.

Gerling offers no evidence of prior incidents of excessive use of force involving Waite or other City officers to show that Tennant "had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." Brewington, 902 F.3d at 803. Nor does Gerling allege that Tennant failed to act on any such prior incidents. The absence of prior complaints to Tennant of improper taser use means there was no pattern of constitutional violations

---

[13] The City's use of force policy authorizes the use of a taser if an individual is at Resistance Level II, defined as when the suspect's indifference is expressed via physical defiance, which may include the individual turning away from the officer and attempting to leave the scene. (Doc. No. 84).

demonstrating that "the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Brossart, 859 F.3d at 628 (quoting Canton v. Harris, 489 U.S. 378, 390 (1989)). Thus, Tennant is entitled to summary judgment on Gerling's failure to train and/or supervise claim.

Even assuming Gerling properly named Tennant in his individual capacity, the outcome is the same. "When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." S.M. v. Krigbaum, 808 F.3d 335, 340 (8th Cir. 2015) (citing Livers v. Schenck, 700 F.3d 340, 355 (8th Cir. 2012)); Parrish, 594 F.3d at 1002. Without evidence of prior incidents of excessive force by City police officers or complaints regarding taser use, Gerling has not met his burden to prove that Tennant received notice of a pattern of unconstitutional acts and Tennant is entitled to qualified immunity as a matter of law.

V.    **Gerling's claims against the City and Waite in his official capacity[14]**

In Count VI of his complaint, Gerling alleges his constitutional rights were violated as a result of the City's policies and failure to train and supervise its officers – in particular Waite – on the use of the taser.

The Court's first inquiry in any case alleging municipal liability under § 1983 is whether there is a direct causal link between a municipal policy or custom and the alleged constitutional

---

[14] Because a claim against a municipal officer in his official capacity is a claim against the municipality itself, see Parrish v. Ball, 594 F.3d 993, 997 (8th Cir. 2010), Waite is entitled to summary judgment on these claims if the City is not liable.

deprivation. <u>Canton</u>, 489 U.S. at 385. As discussed in detail above, Gerling fails to establish a direct causal link between the City's policy requiring personal service of summons for traffic violations and the alleged violations of his constitutional rights. For this reason, the City's motion for summary judgment on Gerling's policy claim will be granted. For the same reason, Gerling's claims against Waite in his official capacity do not survive summary judgment.

As for his failure to train claim against the City, Gerling offers no evidence of prior incidents of excessive use of force involving Waite or other City officers, nor does he allege the City failed to act on any such prior incidents. The absence of prior complaints to the City of improper taser use means there was no pattern of constitutional violations demonstrating that "the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." <u>Brossart</u>, 859 F.3d at 628 (quoting <u>Canton v. Harris</u>, 489 U.S. 378, 390 (1989)). The City's motion for summary judgment on Gerling's failure to train claim will be granted.

## IV.    Conclusion

For these reasons, the Court will grant Tennant and the City's motions for summary judgment in their entirety and grant Waite's motion for summary judgment on Count III. In addition, the Court will grant in part Defendants' motions to exclude the opinions and testimony of Gerling's expert Michael Leonesio.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Matthew Waite's Motion to Exclude Expert Testimony of Michael Leonesio [79] is **GRANTED in part and DENIED in part** in accordance with the rulings herein.

**IT IS FURTHER ORDERED** that Defendants City of Hermann and Frank Tennant's Motion to Disqualify and Exclude Expert Witness Testimony of Michael Leonesio [85] is **GRANTED in part and DENIED in part** in accordance with the rulings herein.

**IT IS FURTHER ORDERED** that Defendant Matthew Waite's Motion for Summary Judgment [80] is **GRANTED** as to Count III and **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Defendant Frank Tennant's Motion for Summary Judgment [87] is **GRANTED**.

**IT IS FURTHER ORDERED** that the City of Hermann's Motion for Summary Judgment [89] is **GRANTED**.

A status conference with counsel will be set by separate order.

Dated this 20th day of December, 2019.

_John A. Ross_

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**