**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **WAYNE GERLING** | |
| Plaintiff, | |
| v. | Cause No. 4:17-cv-2702-JAR |
| **CITY OF HERMANN, MISSOURI, et al.** | **JURY TRIAL DEMANDED** |
| Defendants. | |

**PLAINTIFF'S SUGGESTIONS IN SUPPORT OF HIS MOTION FOR AWARD OF ATTORNEYS' FEES AND NON-TAXABLE COSTS**

COMES NOW, Plaintiff Wayne Gerling, by and through counsel of record, and for his Suggestions in Support of Plaintiff's Motion for Award of Attorneys' Fees and Non-Taxable Costs, states as follows:

## TABLE OF CONTENTS


**I. Background**……………………………………………………………………1

**II. Legal Issues and Standards**………………………………………………...5

**a. Fee Shifting Provisions in Civil Rights Litigation**………………………….5

**b. Standard**…………………………………………………………………...6

**i. Reasonable Fee Defined – Attract Competent Counsel**……………7

**ii. Plaintiff was the prevailing Party**…………………………………...7

**iii. Magnitude of Success**……………………………………………..….8

**iv. Degree of Success – Need Only Win One Significant Claim**………9

**v. Research Time**………………………………………………………10

**vi. ‘Lodestar' Amount – Presumed Minimum Reasonable Fee**……..11

**vii. Amount of Judgment has No Bearing on Whether the Fee is Reasonable**……………………………………………………………..11

**viii. Hours Worked**………………………………………………………12

**ix. Hourly Rate**…………………………………………………………12

**x. Three Primary Attorneys**…………………………………………..15

**xi. Reasonable Non-Taxable Expenses**………………………………..15

**xii. Additional Time Expected**…………………………………………16

**III. CONCLUSION**………………………………………………………………16

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542 (7th Cir. 2009)…………………12

*Anderson v. Director, Office of Worker's Compensation Programs*,
91 F.3d 1322 (9th Cir. 1996) ………………………………………………………………..9

*Avalon Cinema Corp. v. Thompson*, 689 F.2d 137 (8th Cir. 1982) ……………………….….14

*Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) ………………………………………………...14

*Barrow v. Falck*, 977 F.2d 1100 (7th Cir. 1992)………………………………………………...12

*Blanchard v. Bergeron*, 489 U.S. 87 (1989) ……………………………………………………11

*Blum v. Stenson*, 465 U.S. 886 (1984) ……………………………………………………11, 14

*Bruno v. Western Electric Co.*, 618 F. Supp. 398, 406 (D. Col. 1985) ……………………..……9

*Butler v. Dowd*, 979 F.2d 661, 676 (8th Cir. 1992) …………………………………....... 7

*Casey v. City of Cabool*, 12 F.3d 799 (8th Cir. 1993) ……………………………….…...6, 9

*Catlett v. Missouri Highway & Transportation Commission*, 828 F.2d 1260 (8th Cir. 1987) …..9

*Cf. Gumbhir v. Curators of University of Missouri*, 157 F.3d 1141 (8th Cir. 1998) …………..…6

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) ……………………………………..….…9

*Collins v. Southeastern Pennsylvania Transportation Authority*
69 F. Supp. 2d. 701 (E.D. Pa. 1999) ……………………………………………………..…10

*Farrar v. Hobby*, 506 U.S. 103 (1992) ………………………………………………………...8

*Guam Society of Obstetricians and Gynecologists v. Ada*, 100 F.3d 691 (9th Cir. 1996) ……….6

*Hadix v. Johnson*, 65 F.3d 532 (6th Cir. 1995) ………………………………………………...7

*Hendrickson v. Branstand*, 934 F.2d 158 (8th Cir. 1991) ………………………………………11

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ……………………………………………………..7, 11

*Jenkins v. Missouri*, 127 F.3d 709 (8th Cir. 1997) …………………………………….……8, 9

*Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C. Cir. 1984) ……………………………...15

*Moore v. City of Des Moines*, 766 F.2d 343 (8th Cir. 1988) ……………………………………14

*Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000) ……………………………………………..8

*Neufeld v. Searle Laboratories*, 884 F.2d 335 (8th Cir. 1989) …………………………………15

*Newman v. Piggy Park Enterprises, Inc.*, 390 U.S. 400 (1968) ……………………………..……6

*Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999 (8th Cir. 2004) ………...…………8

*Paschall v. Kansas City Star Co.*, 695 F.2d 322 (8th Cir. 1982) ………………………………9

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986)……7, 11

*Perdue v. Kenny A.*, 559 U.S. 542 (2010) ………………………………………………………..7

*Pinkham v. Camex, Inc.*, 84 F.3d 292 (8th Cir. 1996) …………………………………………..15

*Smith v. Freeman*, 921 F.2d 1120 (10th Cir. 1990) ……………………………………..…14

*Snider v. City of Cape Girardeau*, 752 F.3d 1149 (8th Cir. 2014) ……………………..….6, 11

*Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719 (1980) …………………………6

*Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782 (1989) ……..7, 8

*Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585 (7th Cir. 2000)...11, 12

**Statutes and Rules**

42 U.S.C. §1988……………………………………………………………………………5, 15

## I. Background

Plaintiff filed 42 § U.S.C. 1983 claims against Defendants Matthew Waite ("Waite"), Frank Tennant ("Tennant") and the City of Hermann, Missouri ("City") arising from an incident that occurred on November 18, 2012. After more than nine long years, Plaintiff was finally able to get his day in court. Plaintiff asserted claims against Defendant Waite for violating his civil rights by arresting him without a warrant or exigent circumstances in his home, excessive force and prosecution without probable cause.

Twenty-eight seconds after knocking on Plaintiff's door around 9:00 p.m. on a Sunday evening related to an alleged parking violation, Waite shot Plaintiff with the darts of a taser in his living room. In the process, Waite shoved Plaintiff's son-in-law on top of his 9-year-old grandson while intruding into Plaintiff's home. Current Police Chief Marlon Walker admitted in both his deposition and at trial (during an offer of proof) that Plaintiff had committed no crimes prior to being shot with the taser in his living room. During trial, Waite admitted that he wrote in his subsequent report that the 9-year-old was an "aggressive subject" to "cover himself." The jury found Waite's conduct was so egregious and reprehensible that it awarded Plaintiff $500,000 in punitive damages.

Plaintiff asserted a claim against the City for municipal liability and also asserted claims against Tennant, which were dismissed by this Court at the summary judgment stage. The Eighth Circuit dismissed Plaintiff's claim for excessive force as barred by qualified immunity due to it not being "clearly established" that an officer could not shoot someone with a taser in their home based on the circumstances of this case.

Prior to both Tennant and the City being dismissed, Plaintiff was able to obtain invaluable discovery from both that was essential to the prosecution of Plaintiff's unlawful arrest

claim against Waite – including evidence that Waite should never have been at Plaintiff's front door on November 18, 2012. Plaintiff would not have obtained this discovery had these parties not been defendants.

The parties engaged in written discovery and the exchange of voluminous information pursuant to Rule 26(a)(1). The City attempted to thwart Plaintiff from obtaining a lot of essential information by asserting numerous improper objections. It took much negotiation and ultimately a motion to compel to obtain said information. Plaintiff was criminally prosecuted for almost five years, and based on a memorandum written by Tennant to the City prosecutor it was discovered that there was a scheme to obtain some finding of guilt against Plaintiff to defeat the civil lawsuit. Thus, Plaintiff's counsel was required to be involved in the criminal prosecution to preserve Plaintiff's civil claims.

A substantial amount of records related to this criminal prosecution were generated, reviewed and ultimately used by Plaintiff to prevail at trial. Plaintiff even sought damages related to this prosecution and Waite did not object to the same. The depositions of Waite and his supervisor, Lt. Straatmann, were taken in the criminal prosecution and there was an evidentiary hearing where Waite, Plaintiff and Plaintiff's son-in-law (Jerrod McCubbin) all testified. This information was crucial to Plaintiff's case, including showing that Waite constantly changed his story regarding what happened – damaging his credibility at trial. **No fees are being asserted related to these depositions and this evidentiary hearing, nor is any fee being claimed for what Plaintiff had to pay his criminal attorney to defend against this prosecution**.

Multiple audio and video recordings were generated and analyzed frame by frame (including by Defendant's counsel at trial) to determine where Plaintiff was located when he was arrested – which was the central liability issue at trial.

Plaintiff obtained the files of both Tennant and Waite, the City's policies and practices (including use of force policies), numerous documents (including City meeting minutes) related to the relevant ordinances and other parking citations issued by the City, training provided to Waite, and dispatch records showing the reckless conduct of Waite in investigating the alleged parking violation. All of these records were used in prosecuting the unlawful arrest claim against Waite. Had Tennant and/or Lt. Straatmann appeared at trial to testify pursuant to the subpoenas with which they were served, a lot more of these documents would have been introduced as evidence. As the Court knows, Plaintiff's counsel found out after the jury was impaneled that both Lt. Straatmann (who was going to be Plaintiff's first called witness) and Tennant did not intend to appear at trial. Plaintiff's counsel was told that Lt. Straatmann had been exposed to COVID 19, but after trial Plaintiff's counsel was informed Lt. Straatmann tested negative for COVID 19. Plaintiff's counsel was told that Tennant had fallen down on his way to work and required hospitalization. These events coincidently occurred on the very day Lt. Straatmann and Tennant were subpoenaed to provide sworn testimony regarding their involvement in this matter in front of the jury.

Throughout the case, Plaintiff deposed Lt. Straatmann, Tennant, Waite, Chief Marlon Walker, David Polite (City attorney) and Mark Wallace (City Administrator). **Plaintiff is not seeking fees related to subpoenaing Polite or Wallace to testify at trial, even though their need was greatly diminished after it was learned that Lt. Straatmann and Tennant did not intend to appear at trial**. Defendants deposed Plaintiff, Plaintiff's wife, Plaintiff's son-in-law, Plaintiff's daughter and Plaintiff's 9-year-old grandson.

**Plaintiff is not seeking any fees for time spent directly related to discovery sent to the dismissed Defendants that did not bear directly on the claims made against Waite.**

**Plaintiff's counsel is also not seeking fees for time incurred in researching the merits of Defendant Tennant's or the City's motion for summary judgment. Plaintiff's counsel is also not seeking fees for time spent drafting Plaintiff's response to the motions for summary judgment filed by Defendant Tennant or the City and time that was solely dedicated to Waite's summary judgment regarding Plaintiff's excessive force claim. Plaintiff's counsel is further not seeking fees related to responding to Defendants' *Daubert* motion or any fees or expenses related to Plaintiff's retained expert. Finally, Plaintiff is not seeking any time incurred by Arthur Benson, a prominent Kansas City civil rights attorney, who assisted at the outset of this matter regarding strategy for the case**.

Throughout the case, Plaintiff made offers and attempts to resolve the claims against Waite. However, settlement did not materialize and Waite made no substantial offer that approached the jury's verdict. Plaintiff even tried to mediate this case prior to Waite filing his appeal to the Eighth Circuit, but Waite's insurer refused to mediate on the basis that the insurer was confident Waite's appeal would be successful and dispose of the case. **Plaintiff's counsel is only seeking very minimal fees related to this appeal.**

After settlement opportunities failed, the case proceeded to a two-and-a-half-day jury trial against Waite. The jury ultimately returned a verdict totaling $150,000 in compensatory damages and $500,000 in punitive damages. The entire purpose of filing this lawsuit was to send a message that this type of police misconduct is unacceptable in our community. The jury's verdict sent this message loud and clear.

Police misconduct cases are very difficult to litigate and cumbersome to evaluate, and police misconduct trials are very easy to lose. Police officers are trained in testimonial technique and are practiced witnesses because of their numerous court appearances in state criminal

proceedings. Civil rights plaintiffs are often prejudiced simply by the mere fact that they have become involved in a dispute with the police. Overall, these cases are complex, time consuming and preclude additional engagements.

Again, this particular matter continued through litigation for over four years and the jury verdict came over nine years after Waite's unconstitutional actions. Waite contested every issue in the case, including where Plaintiff was physically located when Waite decided to arrest him – even though Waite admitted under oath during the criminal proceedings that Gerling was in his home when this decision was made.

As the prevailing party under § 1983, Plaintiff submits his counsel's request for attorneys' fees. Plaintiff contends that the hourly rates claimed are appropriate for this venue and the hours spent are reasonable in prosecuting Plaintiff's claims to a successful resolution[1].

## II. Legal Issues and Standards

### a. Fee Shifting Provisions in Civil Rights Litigation

42 U.S.C. §1988 provides in relevant part: "In any action or proceeding to enforce a provision of section [] . . 1983 . . . of this title . . . the district court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorneys' fee as part of the costs." The Eighth Circuit has articulated the public policy underlying the fee-shifting provisions in successful §1983 litigation as follows:

> The primary purpose of [the fee-shifting provision] is to promote diffuse private enforcement of civil rights laws by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators. A plaintiff bringing a civil rights action "does so not for himself alone but also as a 'private attorney general,' vindicating a policy of Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorney's fees, few aggrieved parties would be in a position to

[1]Plaintiff will document his fees for time expended on preparing this Motion for Attorneys' Fees and submit other post-trial time charges in a supplemental filing at the appropriate time.

> advance the public interest . . ." *Newman v. Piggy Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968).
>
> In order for such a policy to be effective, Congress felt it appropriate to shift the true full cost of enforcement to the guilty parties to eliminate any obstacle to enforcement. "It is intended that the amount of fees awarded under [the fee-shifting provision] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as anti-trust cases . . ."

*Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993).

While Plaintiff has benefited personally from obtaining his jury verdict, (or will benefit assuming the verdict stands and is collected), the jury's decision serves a much bigger purpose. Specifically, it sent a message that sworn law enforcement officers must abide by the law (including state and municipal laws) and Constitution, and it serves to regulate and monitor the same officers' conduct when it comes to the decision to arrest someone in the sanctity of their own home – particularly over a misdemeanor offense. This will benefit the entire community – not just Plaintiff. As Plaintiff testified during trial, this case was brought to make sure what happened to Plaintiff does not happen to anyone else.

As a result, this case is distinguishable from the cases in which the plaintiff prevails but vindicates only a private, personal interest without community benefit. *Cf. Gumbhir v. Curators of University of Missouri*, 157 F.3d 1141 (8th Cir. 1998) (limited civil rights value to salary dispute by professor over a modest $20,832 in salary damages).

Attorneys' fee claims by plaintiffs under §1988 should be granted **unless there is a special reason compelling denial.** *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719 (1980) (emphasis added). There is no special reason compelling denial in this case.

**b. Standard**

The court has discretion over the attorneys' fee award in a civil rights case. *Guam Society of Obstetricians and Gynecologists v. Ada*, 100 F.3d 691, 695 (9th Cir. 1996); *Snider v.*

*City of Cape Girardeau*, 752 F.3d 1149, 1159 (8th Cir. 2014). A trial court has a "special understanding" of the complexity of a case, and therefore is best equipped to determine the reasonableness of the hours expended by counsel. *Butler v. Dowd,* 979 F.2d 661, 676 (8th Cir. 1992). The Court should make reasonably detailed findings so that the court's exercise of discretion may be reviewed on appeal. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

**i. Reasonable Fee Defined – Attract Competent Counsel**

A "reasonable" fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). If plaintiffs "find it possible to engage a lawyer based on the statutory assurance that he will be paid a 'reasonable fee,' the purpose behind the fee-shifting statute has been satisfied." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). A reasonable attorneys' fee is one that is "adequate to attract competent counsel, but that does not produce windfalls to attorneys." *Perdue*, 559 U.S. at 552. The determination of "the going rate in the community is in actuality the most critical factor in determining a reasonable fee." *Hadix v. Johnson*, 65 F.3d 532 (6th Cir. 1995).

Due to the large amount of work anticipated to get this case through trial, one of the primary reasons undersigned counsel were attracted to the case was the availability of the fee shifting statute. Moreover, the affidavits of counsel and the billing rates published by Missouri Lawyers Weekly demonstrate that the requested rates are reasonable and comparable to rates charged by other attorneys in both the St. Louis and Kansas City markets.

**ii. Plaintiff was the prevailing Party**

"A prevailing party [is] one who has succeeded on any significant claim affording it some of the relief it sought." *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489

U.S. 782, 791 (1989). A plaintiff is the prevailing party when actual relief materially alters the relationship between the parties. *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).

Plaintiff will not state the exact amount of any firm settlement offer made by Defendant (Defendant only made two settlement offers and flatly refused to attend mediation prior to appealing this Court's decision regarding his motion for summary judgment), but the verdict substantially exceeds the highest offer. With this in mind, Defendant never made a "substantial settlement offer" as that term is defined in the following case law: "Substantial settlement offers should be considered by the district court as a factor in determining the award of reasonable attorneys' fees, even where Rule 68 does not apply." *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1012 (8th Cir. 2004) (quoting *Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000). An "offer is substantial if . . . the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party." *Id*. at 1013 (quoting *Moriarty*, 233 F.3d at 967).

Plaintiff ultimately succeeded against Defendant regarding his claim for unlawful arrest and now has a $650,000 judgment against Defendant. Thus, the relationship between Plaintiff and Defendant has changed. The claim on which Plaintiff prevailed was significant, to both Plaintiff and the community, rendering him the prevailing party.

**iii. Magnitude of Success**

The "most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." *Jenkins v. Missouri*, 127 F.3d 709, 716 (8th Cir. 1997).

Here, Plaintiff received a $650,000 verdict against an individual police officer without any evidence (or even argument) that Plaintiff suffered any serious or long-term physical injury.

The jury's verdict sent a message that the sanctity of one's home is still sacred, and that this type of police misconduct is no longer tolerable in our community – which is the very reason this lawsuit was filed. Thus, Plaintiff suggests this is a success of enormous magnitude.

**iv. Degree of Success – Need Only Win One Significant Claim**

Plaintiffs who achieve success must be awarded a fully compensatory fee even if the court does not adopt every contention raised by those Plaintiffs. *Catlett v. Missouri Highway & Transportation Commission*, 828 F.2d 1260, 1270 (8th Cir. 1987). This includes time expended on all pre-trial motions, *Paschall v. Kansas City Star Co.*, 695 F.2d 322, 336-37 (8th Cir. 1982); all time expended in discovery, *Bruno v. Western Electric Co.*, 618 F. Supp. 398, 406 (D. Col. 1985); and time spent on preparing post-trial pleadings for an award of attorneys' fees and costs, *Anderson v. Director, Office of Worker's Compensation Programs*, 91 F.3d 1322, 1325 (9th Cir. 1996).

Because "damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private cases, to depend on substantial monetary relief." *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986). Once a party is found to have prevailed, the award should not be reduced merely because a party did not prevail on every theory raised in the lawsuit. *Casey v. City of Cabool*, 12 F.3d 799, 805-06 (8th Cir. 1993). Further, a plaintiff is entitled to fees for time spent on issues on which plaintiff did not prevail if it was reasonable to have litigated them to secure a verdict. *See Jenkins by Jenkins v. State of Missouri*, 127 F.3d 709, 718 (8th Cir. 1997(defining the test as whether "the plaintiff's attorneys would have been expected or obliged to take the position they took.").

While Plaintiff succeeded on his unlawful arrest claim against Waite, Plaintiff's other claims were essential to developing the claims against Waite. As Plaintiff was allowed to seek damages due to being shot with the taser, all discovery conducted related to Plaintiff's excessive force claim was essential to securing a verdict. While this Court did not allow Plaintiff to enter into evidence the fact that every police officer and administrator in the City of Hermann knew Plaintiff's commercial vehicle was legally parked, Defendant's defense was certainly impacted by the fear of doing something to "open the door" and allow this evidence in. This discovery was also essential to proving that Waite either intentionally or recklessly violated Plaintiff's constitutional rights – which led to the punitive damage award. Had Lt. Straatmann and/or Tennant appeared at trial pursuant to their validly served subpoenas, even more of this discovery would have been used at trial.

Moreover, Plaintiff's counsel has reduced and excluded time spent related to claims of other defendants that did not impact the claims against Defendant Waite.

**v. Research Time**

As the time records show, Plaintiff's counsel spent time researching the legal issues herein. In *Collins v. Southeastern Pennsylvania Transportation Authority*, the federal district court addressed the compensability of research time:

> Even an experienced attorney should research the legal issues pertaining directly to the case at hand. Nor is the suggestion that a junior associate could have done the work persuasive.

69 F. Supp. 2d. 701, 705 (E.D. Pa. 1999)

Here, all counsel for Plaintiff work for firms with less than 15 attorneys. Younger associates were utilized by both firms to assist with research and the drafting of the briefs / motions.

**vi. 'Lodestar' Amount – Presumed Minimum Reasonable Fee**

The "lodestar figure" is the number of hours reasonably expended multiplied by the attorneys' reasonable hourly rates to determine the product. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This "resulting product is presumed to be the minimum reasonable fee to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986); *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Hendrickson v. Branstand*, 934 F.2d 158, 1162 (8th Cir. 1991) ("the lodestar award . . . is presumptively a reasonable fee, and most factors relevant to determining the amount of the fee are subsumed within the lodestar"). For example, the "novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel and thus do not warrant an upward adjustment in a fee based on the number of billable hours times reasonable hourly rates." *Blum*, 465 U.S. at 898; *see also Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1159 (8th Cir. 2014) (stating that the lodestar amount is the "starting point" for determining an attorney's fee award). Further, the lodestar is entitled to a strong presumption of reasonableness. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989).

**vii. Amount of Judgment has No Bearing on Whether the Fee is Reasonable**

Because Congress wants even small violations of certain laws to be checked through private litigation and because litigation is expensive, it is no surprise that the cost to pursue a contested claim will often exceed the amount in controversy. *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 592 (7th Cir.2000). That is the whole point of fee-shifting—it allows plaintiffs to bring those types of cases because it makes no difference to an attorney whether she receives $20,000 for pursuing a $10,000 claim or $20,000 for pursuing a $100,000 claim. *See id.* Fee-shifting would not "discourage petty tyranny" if attorney's fees were

capped or measured by the amount in controversy. *Barrow*, 977 F.2d at 1103; *see Tuf Racing*, 223 F.3d at 592; *Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542, 545 (7th Cir. 2009).

**viii. Hours Worked**

Plaintiff's counsel have attached time records and affidavits indicating the time spent on this matter as follows:

- Kevin Carnie 334.6 hours
- David Welder 496 hours
    - Courtney McCray 17.3 hours
    - Paul Breer 5.7 hours
    - Emily Tung 11.5 hours
    - Holli Dobler 33.4 hours
- Patrick McPhail 217.6 hours
- Amy Sciuto 51.7 hours
- Cheryl Little 42.5 hours
- Aly Ridgley 44.3 hours

These exhibits detail in chronological order the dates each task was performed, the nature of the task itself and the time required to perform the task. The work was reasonable and necessary for the prosecution of Plaintiff's unlawful arrest claim against Waite.

**ix. Hourly Rate**

Undersigned counsel seek hourly rates of $595 per hour for Kevin Carnie, $500 per hour for David Welder, $450 per hour for Patrick McPhail, $350 per hour for Courtney McCray, Paul

Breer, Emily Tung and Holli Dobler, $275 per hour for Amy Sciuto and $250 per hour for Cheryl Little and Aly Ridgley.

Kevin Carnie served as the lead trial attorney and has been actively involved with this case since it was filed in November 2017. Mr. Carnie deposed David Polite, Mark Wallace and Marlon Walker, the corporate representatives of the City and was the primary developer of case strategy, was actively involved throughout discovery, examined Waite and Marlon Walker at trial and conducted closing argument – among the other activities detailed in **Exhibit A, Affidavit of Kevin Carnie**. As indicated in his affidavit, Mr. Carnie has secured over $100 million in verdicts and settlements for clients in a wide variety of cases, ranging from class actions, complex product liability suits, construction disputes, intellectual property matters, civil rights and personal injury. **Exhibit A, p. 2, ¶ 5**. As also explained in his affidavit, Mr. Carnie has extensive experience in civil rights matters and has been sought after by other attorneys, civil rights organizations and the media regarding his expertise. **Exhibit A, p. 2, ¶ 6**.

David Welder has been actively involved in this case since November 2014, including spending almost three years guiding Plaintiff through the criminal process in order to protect Plaintiff's civil rights claim. Mr. Welder deposed Lt. Straatman, produced Plaintiff and his family for their depositions, actively participated in written discovery, was primarily responsible for keeping Plaintiff updated about the case and discussing strategy, primarily prepared the response to Waite's motion for summary judgment and examined Plaintiff and his wife at trial – among the other activities detailed in **Exhibit B, David Welder Affidavit**. Since becoming licensed in 2009, Mr. Welder has practiced extensively in the area of complex civil litigation (mostly multi-million dollar claims) and handled all aspects of the same, including multiple trials and arbitrations, all across the country. **Exhibit B, p. 1 ¶ 3.**

Patrick McPhail has also been actively involved in this case since November 2017. Mr. McPhail drafted the Complaint, was very active during discovery, deposed Waite and Tennant, drafted many of the pretrial and trial motions, conducted opening argument at trial and examined Plaintiff's son-in-law, Jerrod McCubbin, at trial – among the other activities detailed in **Exhibit C, Patrick McPhail Affidavit**. As indicated in his affidavit, Mr. McPhail has secured over $30,000,000 in verdicts and settlements for personal injury victims, including a $5,100,000 jury verdict in Jefferson County in 2019 and a $10,000,000 verdict in St. Louis County in 2021. **Exhibit C, p. 2, ¶ 4**. Mr. McPhail also has extensive experience in civil rights matters. *Id.*

The prevailing party has the burden of proving the prevailing market rate. *Smith v. Freeman*, 921 F.2d 1120 (10th Cir. 1990); *Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997). In setting a reasonable attorneys' fee, the touchstone is whether the rate is in line with those prevailing in the community for similar services by lawyers of reasonable comparable skill, experience and reputation. *See Blum v. Stenson*, 465 U.S. 886, 895-96 (1984); *see also Moore v. City of Des Moines*, 766 F.2d 343, 346 (8th Cir. 1988) (whether rate is "within the general rates charged for a particular service in the relevant community"); *see also Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140 (8th Cir. 1982) (in general, reasonable rate is "ordinary fee for similar work in the community.")

Plaintiff has attached billing rates surveys by Missouri Lawyers Media in 2020 and 2019, which show the suggested rates are reasonable. (see **Ex. D**, showing the partner median rate of $490 in 2021 and $475 in 2019 and the associate median rate of $300 in 2021 and $345 in 2019 in the Kansas City Market) (see **Ex. E**, showing the partner median rate of $450 in 2021).

The rates being requested by Plaintiff's counsel are certainly reasonable and in line with the St. Louis and Kansas City markets.

**x. Three Primary Attorneys**

Through the course of the litigation, Plaintiff was represented by two primary attorneys (Kevin Carnie and David Welder) from two separate law firms – each with their own unique skill sets. Mr. Carnie and Mr. Welder were assisted by associate attorneys in their firms (primarily Patrick McPhail) and paralegals. As the affidavits make clear, the work was generally divided up between counsel and efforts were not duplicative.

Again, Plaintiff's counsel also served distinctive roles in this litigation and at trial, and their efforts were not duplicative. Each backed up the other in his primary area of responsibility and each was more efficient because of the work and suggestions of the other attorneys.

Private clients with complex matters are commonly represented by multiple lawyers at trial and there is no reason why civil rights plaintiffs should be limited to a legal team with fewer members than necessary to handle the case.

**xi. Reasonable Non-Taxable Expenses**

Plaintiff is entitled to recover the expenses incurred in the prosecution of this litigation. Recoverable expenses include all costs and reasonably related out-of-pocket expenses. *Neufeld v. Searle Laboratories*, 884 F.2d 335, 342 (8th Cir. 1989); *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 30 (D.C. Cir. 1984) (authority granted in 42 U.S.C. § 1988 to award a "reasonable attorney's fee" in civil rights case include reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client); *see also Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996) (a reasonable attorneys' fee must include "reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys.").

Plaintiff seeks $5,328.49 in non-taxable costs incurred by Norris Keplinger Hicks & Welder, LLC (**Exhibit F, amounts highlighted in yellow**) and $3,843.94 incurred by The

Simon Law Firm, PC (**Exhibit G, items highlighted in yellow**) in prosecuting this matter. The total amount of non-taxable costs sought is $9,172.43.

**xii. Additional Time Expected**

Plaintiff is filing this Motion for Attorneys' Fees on January 4rior to submission to Court. , 2022. Plaintiff anticipates that additional work will be required to respond to Defendant's post-trial motions and therefore anticipates filing a brief supplement to this Motion.

## III. CONCLUSION

Plaintiff prays for an award of attorneys' fees of $604,689.50 and out-of-pocket non-taxable costs of $9,172.43 – for a total award of $613,861.93. In addition to what has been stated above, this amount is reasonable given the history of this matter, its duration and complexity and the defenses asserted.

**WHEREFORE**, Plaintiff respectfully requests this Court award Plaintiff $613,861.93 for his attorneys' fees and non-taxable costs, and for such other and further relief as this Court deems just and proper.

Dated: January 4, 2022

Respectfully submitted:

**NORRIS KEPLINGER HICKS & WELDER, LLC**

By: s/*David J. Welder*
David J. Welder, #61806 MO
dwelder@nkfirm.com
11551 Ash Street, Suite 200
Leawood, Kansas 66211
(913) 663-2000
(913) 663-2006 (Fax)

**THE SIMON LAW FIRM, P.C.**
John G. Simon, #35321 MO
Kevin M. Carnie Jr., #60979 MO
Patrick R. McPhail, #70242 MO
800 Market Street, Suite 1700
St. Louis, MO 63101
Telephone: 314-241-2929
jsimon@simonlawpc.com
kcarnie@simonlawpc.com
pmcphail@simonlawpc.com

***Attorneys for Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served via the Court's CM/ECF filing system on this 4th day of January, 2022, to all counsel of record.

s/*David J. Welder*
**Attorney for Plaintiff**